UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

Essex, ss.

| | |
|---|---|
| Back Beach Neighbors Committee | ) |
| | ) |
| v. | )   Docket No. 20-11274 |
| | ) |
| Town of Rockport | ) |

**Opposition to Defendant's Motion to Dismiss**

Now comes the Back Beach Neighbors Committee ("Committee") who opposes the Town of Rockport's Motion to Dismiss its complaint.

## **Argument**

### I. Public Nuisance is fundamentally different than Private Nuisance and not, according to state case law, subject to Chapter 258.

The Town argues that the public nuisance claim is both subject to Chapter 258 and must be dismissed. Arguing from Morrissey, the Town conflates private and public nuisance claims. This conflation is erroneous. The Morrissey Court only dealt with private nuisance claims overruling a string of Massachusetts Appeals Court cases, but did not cite to or mention Connerty v. Metropolitan District Commission, 398 Mass. 140, 149-150 (1986) (holding that Chapter 258 does not apply to intentional torts, including public nuisance). *See Also* Connerty, at 151 (Wilkins, J. concurring) (commenting that majority had unfortunately found some but not all public nuisance claims covered by G. L. c. 258); Sullivan v. Chief Justice, 448 Mass. 15, 34 (2006)(discussing public nuisance, at length, following a discussion of G. L. c. 258 §10(j) exclusion). The Morrissey Court was quite specific in referring to private nuisance.

Nor is this distinction, between public and private nuisance, insignificant. Private nuisance has been given a special statutory treatment in G. L. c. 243. By undertaking a public nuisance complaint, the Committee must show a special injury in order to bring a type of action which

1

normally only public officials may bring.[1]  Additionally, public nuisance affects the remedy available to the Committee, for unlike private nuisance, only equitable relief is available under the rubric of public nuisance.  It is also a significant absence in the Town's motion to dismiss that it does not challenge this action based on the residuum of common law sovereign immunity, outside of the scope of the Tort Claims act. *Cf.* Fernwald Corp. v. The Governor, 471 Mass. 520, 524-525 (2015).

The Tort Claims Act, despite the idea of a comprehensive statement on sovereign immunity, is not such.  The SJC has noted over that years that it does not apply to contracts or quasi-contract (J. A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986)) some limited forms of declaratory judgments (Sullivan, 448 Mass. at 24) or other injunctive relief (Lane v. Commonwealth, 401 Mass. 549 (1988)) or where the municipality waived the act, such as by accepting an appointment as trustee (Woodward School for Girls v. City of Quincy, 469 Mass. 151, 176-177 (2014)).  The Tort Claims Act is akin to a maze which litigants, both public and private, seek to obtain advantage, sometimes by running through and other times by being excluded from its reach.  Neither choice, running the maze or going around it, is fatal but each comes with its own pros and cons.  In this case, the standing case law holds that public nuisance is not within the reach of the Tort Claims Act.[2]

    **II.**    **The Massachusetts Tort Claims Act does not prohibit equitable or injunctive relief on those types of claims for which it prohibits, or limits, money damages.**

---

[1] The Committee's standing to bring a public nuisance claim is not, in the present motion, attacked.

[2] Given the admitted tension between Connerty (holding public nuisance is exempt from MTCA) and Morrissey (holding that private nuisance is not exempt from the act) the Committee will ask this court to, in the alternative, submit a certified question to the Supreme Judicial Court.  Though the request is raised here, it will also be made in a separate motion.

In some familiar ways, the Massachusetts Tort Claims Act echoes the current state of federal immunity law.  Most notably, G. L. c. 258 does not limit claims for equitable or injunctive relief, like the Ex Parte Young exception to the 11th Amendment's sovereign immunity proscription. Young, of course, exempts suits for equitable or injunctive relief from the reach of the 11th Amendment, because the motivation of the Amendment is to protect a state's treasury.

Although the matter of a Young-type limitation on the immunity provided by G. L. c. 258 is technically an open legal question, the cases have all but determined the question.  *See* Sullivan, 448 Mass. at 31 n. 10 (holding that the presentment requirement of G. L c. 258 §4 does not apply to declaratory or equitable relief claims); Lane v. Commonwealth, 401 Mass. 549 (1988) (holding that while money damages were prohibited, injunctive relief would still be available).  Indeed, by its express terms, Chapter 258 only applies to tort damages. Triplett v. Oxford, 439 Mass. 720, 724 (2003) ("The word 'claim,' as used throughout G. L. c. 258, refers to civil actions for tort damages. G. L. c. 258, §§ 2-5…The word 'demand' as used in G. L. c. 258 [] refers to a demand for civil damages.")

> [T]he enactment of G. L. c. 258 did not bar the development and application of common law principles governing the liability of public employers in areas to which G. L. c. 258 does not apply. Thus the common law may impose liability on a government employer for certain wrongs, even intentional wrongs, committed by one of its employees. We can think of no basis for recognizing some form of governmental immunity that would prevent issuance of an injunction against an ongoing wrong committed systematically and intentionally by a governmental agency for the continuing benefit of the Commonwealth. Cf. Ex parte Young, 209 U.S. 123, 159-160 (1908) (injunction against State official seeking to enforce unconstitutional law)…Government employers have been held liable at common law for wrongs committed by their employees that were more than merely negligent wrongs…Injunctions have been authorized against continuing governmental wrongs.

Lane, 401 Mass at 551-552. *See Also* Doe v. Sex Offender Registry Board, 94 Mass. App. Ct. 52, 63-64 (2018) (citing to Lane and Young and holding that declaratory and injunctive relief may be founded directly upon the Massachusetts Declaration of Rights). The Tort Claims act does not prohibit the Committee from receiving equitable relief, declaratory or injunctive, upon its private nuisance claim. The Act, protecting the treasury, merely restricts the availability of money damages. Thus, while the Committee can recover no monetary damages except, possibly, within the confines of the §1983 claims it is still entitled to make its plea for equitable relief.

### III. In any event, the exceptions of liability posed in G. L. c. 258 §10 do not avail the Town any relief

#### a. Section 10(j)

The application of §10(j), the modern public duty rule of Massachusetts, is difficult at best. "To say that § 10 (j) presents an interpretive quagmire would be an understatement," because of the Tort Claims Act's "convoluted and ambiguous," language. Brum v. Dartmouth, 428 Mass. 684, 692 (1999). Many nuisance claims, public or private, have an element of negligence contained within them. Indeed, because of the creative way complaints can be cast, courts reviewing arguments under G. L. c. 258 §10 look at the "gravamen of [the] plaintiff's complaint." Morrissey, at 593. Although proceeding under a shotgun defense, the Town pleads G. L. c. 258 §10(j) in its defense. In doing so the Town clearly overlooks the four specific exclusions. For example, §10(j)(3) excludes from the reach of the Act's exception "any claim based on negligent maintenance of public property." To the extent that the Town has permitted a nuisance (public or private) to continue negligently, it clearly remains liable under the act. *See* Sullivan, at 33 ("While the plaintiffs' complaint does not specifically include a count for negligence, the thrust of their complaint is negligent maintenance…[i]f proved, such allegations would not be barred by

4

sovereign immunity in accordance with G. L. c. 258, § 10(j)(3)."). Likewise, §10(j)(2) excludes occasions where the intervention of a public official causes injury to the victim, or puts them in a worse position, such as when Rockport's police officials disclose the identity of the complaining neighbors by going their house, instead of calling on the phone, after talking to the divers complained of. So to, does the limitation of §10(j)(1), for reliance upon a public employee's promise to investigate, prohibit the application of the Tort Claims act to some, but not all, of the Committee's factual averments. For example, the

### b.  §10(e)--Permits

The Permit exclusion exists only to prevent public agencies from being drawn into disputes between private parties when performing a public function. It would, for example, prohibit the Town from being drawn into a dispute over termites in a real estate transaction between a buyer and seller, simply because its building inspector had made an inspection or issued an occupancy permit. This exclusion, narrowly drawn, is not intended to shield the government from actions when it is the prime participant. Similar reasoning motivates the 'market participant' exception to the Constitution's state action doctrine.

Although §10(e) has been described as having a "broad swath," the fundamental root is that the activity must turn on a licensing or permit type decision, for the purpose of preserving the zone of discretion needed to responsibility use permitting authority. Smith v. Registrar of Motor Vehicles, 66 Mass. App. Ct. 31, 33 (2006) (pondering hypotheticals of RMV employee dropping camera on foot of customer but noting that record-keeping was central to function of issuing licenses). Thus, the presence of a license, anywhere in the vicinity of a claim, is not a magic wand which will dismiss claims.

In this case, the Plaintiffs seek to determine the constitutionality and legality of the Town's policies. The question is not one of liability in a specific case (the issuance or non-issuance of a

permit or license) but what the general rules and statutes mean. The Town, by rhetorical slight of hand, has tried to recast the Committee's complaint in a manner which is not true to the text of the pleading. The Committee does not, fundamentally, complain about a lack of enforcement. However, over the decades, when asked in person the Town's police have given inconsistent answers in budget meetings and public functions as to why or how they enforce the rules. The Town is quite correct that the Committee cannot insist upon enforcement, except when a special promise or relationship exists as alleged in the failure-to-act claim. But the Committee is not seeking (generally) to demand enforcement but to clarify the reach and breadth of existing rules. The Committee **is** entitled to clear up misconceptions by the Town when the misconceptions cause it to not enforce valid rules. Because the Committee is taking issue with, or clarifying, the entire licensing scheme, rather than picking apart a particular licensing decision, §10(e) does not operate to dismiss this case.

### c. §10(h)—Police Protection

In raising this exception, the Town disingenuously only quotes part of the material.[3] §10(h) provides, in full,

> any claim based upon the failure to establish a police department or a particular police protection service, or if police protection is provided, for failure to provide adequate police protection, prevent the commission of crimes, investigate, detect or solve crimes, identify or apprehend criminals or suspects, arrest or detain suspects, or enforce any law**, but not including claims based upon the negligent operation of motor vehicles, negligent protection, supervision or care of persons in custody, or as otherwise provided in clause (1) of subparagraph (j).**

---

[3] The Committee feels safe and justified in asserting skullduggery because the Town, in quoting from the Act, inserted punctuation, a period, to give the appearance of a complete statement or idea. This punctuation is not original to the act and is not denoted as an addition, or in accordance with the conventions of grammar which do, sometimes, allow for the altering of non-essential punctuation. This appearance left out the portion of §10(h) which is openly subjugated, by cross-reference, to §10(j)(1) which runs in favor of the Committee.

G. L. c. 258 §10(h) (emphasis added to language omitted from the Town's quotation).  The proviso in bold, subjects §10(h)'s limitations to items which are reached by §10(j)(1).  §10(j)(1) allows the Committee to rest, and sue for harm, upon specific assurances given by public officials which cause an unjustified sense of safety.  However, it is indisputable that the Committee, although challenging the legality of policy alleged to prevent enforcement, makes a distinct claim that the Town is unable or unwilling to protect them from harms stemming from the beach.  Although the Committee sharply disagrees with the Town's attempts to recast this dispute as, solely, an enforcement issue, even taking it on such terms §10(h) does not prevent suits for "negligent protection."

## IV.     Conferral of Benefits

In its motion, the Town fails to accord the Plaintiff's pled facts the deference they are due under Fed. R. Civ. Pro. Rule 12(b)(6).  The Town's defense to this count is to simply deny the Committee's facts, contrary to the well-established rule that "In the process, we accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).

The Town's mistake, a simple factual denial, is one which can afford it no relief at the preliminary stage of proceedings. The Complaint adequately pleads that scuba divers receive permits for commercial use of the public beach for no fee, while others must pay. *E.g. Amended Complaint* at ¶42 ("…The Town has enabled this special franchise by giving out unrestricted permits, without condition, for no fee in contrast to other special permitted activity under the Town's bylaws…"); ¶57 ("Unlike all other special permits which the Town issues, it does not take fees from the special permits issued to dive groups, when it requires the groups to have permits at all.").  At the summary judgment stage, the Court will be told that other commercial activities on the beach, such as yoga, are charged fees. Nor is the beach a logical stopping point because other commercial

7

activity on Town property, such as the public streets, also require a permit and the Town charges the flea market vendors exorbitant fees. The Town's fixation on the word 'class' in this count does a disservice to the Complaint, which simply pleads a more localized version of a rational basis level equal protection claim, because the Town's distinctions are arbitrary. The twist is that the State's Constitutional provisions outlaw providing special benefits to discrete classes or groups. Although this special benefit to divers is not written, in this context, as formal policy within the regulations, it is clearly apparent in practice, such as by the Town's varying of fees, and fairly pled.

Regarding the bylaws of the Town of Rockport, they clearly prohibit recreational and commercial scuba diving in the Back Beach Area. At the Town's annual Town Meeting in 2003, the Town adopted a bylaw[4] which reads:

> No person shall scuba dive, swim or snorkel in Rockport harbors except for purposes related to hull and mooring inspection, cleaning and maintenance

*Rockport Bylaws*, §9.A.10. The Bylaw must be read in context with a pair of definitions.

> *Rockport harbors.* The term "Rockport harbors" includes Rockport Harbor, Old Harbor, Granite Pier Harbor and Pigeon Cove Harbor.
>
> *Scuba.* The word "scuba" shall mean self-contained underwater breathing apparatus consisting of a diving apparatus with compressed air tanks for breathing underwater…

*Rockport Bylaws*, §9.A.1. By fair reading, as well as express wording, the Committee has pled that believes that the waters immediately off Back Beach are one of the "Rockport harbors." *See Complaint*, ¶46 (noting that "Back Harbor" is one of the Rockport Harbors under the bylaw).

---

[4] Ordinarily, Massachusetts holds to the ancient common law practice that bylaws must be proven and are not susceptible of judicial notice, in contrast to statutes. *See Massachusetts Guide to Evidence*, §2.02(c). However, the Complaint directly references the bylaws several times and the Town included the bylaws as an exhibit to its motion. This should be sufficient to allow the Court to at least consider the plausibility of the argument.

The Town has accorded scuba divers special privileges, such as not taking any fees from them when granting commercial permits to use the beach. When the Town does take fees from other people, conducting other activities on the beach, specifically, or Town property generally, such as the flea market on public streets in the downtown business district, it creates a favored group of people. This is the direct conferral of a special benefit distinct from the community at large. That the Town claims, by straight denial, to not do so is a matter of proof for summary judgment. Likewise, it is a matter of persuasive weight rather than sufficiency of the pleadings, reserved for a later stage of litigation, that Rockport does not have a formal beach regulation separating out divers.

V.  **Declaratory Judgement**

Massachusetts has a liberal declaratory judgment statute, which is far more generous than its federal analog. G. L. c. 231A. Declaratory relief, a species of equitable relief, has a long pedigree. The Massachusetts Declaratory Judgment act, Chapter 231A, allows for a court to consider any controversy as long as there is standing, and the issue is not too remote or speculative. More discretely, the Declaratory Judgment Act has a special solicitude for those seeking to litigate the constitutionality or legality of policies or customs, formal or informal, written or unwritten, of public officers.[5]

> The procedure under section one may be used to secure determinations of right, duty, status or other legal relations under… the common law, or a charter, statute, municipal ordinance or by-law, or administrative regulation, including determination of any question of construction or validity thereof which may be involved in such determination. Said procedure under section one may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any municipal, county or state agency or official which practices or

---

[5] The Act has a list of specific officials against whom declaratory relief cannot be brought, such as the Governor, but the Town does not claim to be immune.

> procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth, or are in violation of rules or regulations promulgated under the authority of such laws, which violation has been consistently repeated… For the purpose of this section practices or procedures mean the customary and usual method of conducting municipal, county, state agency or official business.

G. L. c. 231A §2.  In its motion to dismiss, the Town simply claims, without elaboration, that the declaratory relief count fatally fails to specify what the Committee would like the Court to declare. This assertion is both unsupported and untrue.  The Complaint clearly pleads that:

- The Court should declare whether the waters off Back Beach fall within the bylaw prohibiting scuba diving in the four 'Rockport Harbors'. *Amended Complaint*, at ¶46.
- The Court should declare whether the OSHA regulations apply to the scuba diving off of Back Beach. *Amended Complaint* at ¶47-48
- Whether the Town's bylaw requiring special permission for the commercial use of the beach applies to paid scuba diving instruction off of Back Beach. *Amended Complaint*, ¶49.
- Whether the Massachusetts Diving Access Law, or the Town Beach Regulations, prohibit night diving. *Amended Complaint*, ¶50.

These averments are both specific and targeted.  There is no weakness or insufficiency in them.

**VI.    Ten Taxpayer Statute**

In one of the venerable statutes, Massachusetts allows ten taxpayers to bring suit to enjoin illegal expenditures. G. L. c. 40 §53.  Massachusetts has several similar statutes which allow citizens or taxpayers to invoke the jurisdiction of court of equity to enforce obligations, particularly fiscal ones, upon the government.[6] This citizen participation, by suit in equity, is an old and

---

[6] *E.g.* G. L. c. 71 §34 (ten taxpayers entitled to force municipalities to pay money for school system); G. L. c. 62F §7 (24 taxpayers entitled to enforce law limiting growth of state tax revenues); G. L. c. 111 §25G (ten taxpayers entitled to enforce law relating to public expenditure for health care facilities); G. L. c. 138 §67 (25 taxpayers entitled to require investigation of liquor license violations); G. L. c. 138 §17 (same for seasonal liquor licenses);  G. L. c. 44 §62 (five taxpayers entitled to prosecute violations officials who bind municipality to obligation without prior appropriation);  G. L. c. 214 §3 (special jurisdiction for ten taxpayers to enforce terms of gift or bequest to government);  G. L. c. 31 §2 (ten registered voters entitled to petition for investigation by Civil Service Commission); G. L. c. 30A §23 (three registered voters entitled to enforce open meeting law); G. L. c. 45 §7 (ten taxpayers entitled to sue to enjoin wrongful use of public park land for building); G. L. c. 214 §7A (ten residents entitled to enjoin practices harmful to the environment).

established tradition in Massachusetts stretching back to the days of the Royal Governors. G. L. c. 40 §53 traces its lineage to 1847. Richards v. Treasurer & Receiver General, 319 Mass. 672, 674 (1946).

The Town, in the manner of a drive-by, makes several attacks against the ten-taxpayer complaint. For example, the Town complains that the Committee does not identify 10 taxpayers, ignoring that the complaint pleads "The Committee…has more than 10 taxpayers." *Complaint*, ¶52. There is no requirement that they be identified. This attack is particularly egregious where the Committee had sought to, and thought that it had, obtain consent to a protective order from the Town. The Committee can, of course, make the names of its members available but their absence is not grounds to dismiss the complaint.

Proceeding to again ignore the dictate of Rule 12(b)(6) that assume the Plaintiff's facts as true, the Town then asserts, contrary to the Complaint, that the ten taxpayers do not exist. *Town Motion to Dismiss*, at 11 [ECF #10] ("…but even if there are ten such Committee members…").

G. L. c. 40 §53 and its related statutes, such as G. L. c. 44 §62, are primarily fiscal statutes to protect municipal treasuries, according to rules laid out by the Legislature, from abuse by municipal officials. Indeed, the statute "permits taxpayers to act 'as private attorneys general' to enforce laws designed to prevent abuse of public funds by local governments..." Caplan v. Town of Acton, 479 Mass. 69, 74 (2018). However, the caselaw holds that while fiscal protection is the aim, money is not the *sine qua non*. "Ordinarily such burdens would be of a financial character, but it is not necessary now to say that they must always be so." Lynch v. City of Cambridge, 330 Mass. 308 (1953) (holding that sewer easement where City suffered no loss could not support ten taxpayer jurisdiction).

> [W]e think that a department or officer of the Commonwealth is 'about to expend money' within the meaning of section [53] whenever, as in the present case, it appears that, if events take their normal course, if no extraordinary intervention occurs, and if there is no restraint by the court, it or he will pay out money or take part in paying it out.

Sears v. Treasurer and Receiver General, 327 Mass. 310, 318 (1951). A municipality voting to accept a statute authorizing the issuing of bonds is good enough to support jurisdiction. Prince v. Crocker, 166 Mass. 347 (1896). Even the act of the Secretary of the Commonwealth in physically printing laws will support jurisdiction. Sears, at 628. The ten-taxpayer statute "should be given 'a somewhat liberal construction'" Sears v. Treasurer and Receiver General, 327 Mass. 310, 318 (1951) *citing* Prince.

The Complaints clearly pleads:
- The Town is unlawfully foregoing permit fees (both for special permits and under G. L. c. 136) ¶42, 57, 58, 66,
- The Town will unlawfully receive and then spend grant money and appropriated tax revenue under the federal Complete Streets program.[7] ¶19.

For direct fiscal consequences, these two averments are sufficient to ground a 10-taxpayer action. However, the Committee also pleads and is entitled to seek relief for the economic burden being placed on the Town in the form of risks from and benefits to scuba divers.

### VII. Sunday Day of Rest Law

The Town, under this heading argues several interrelated domino type arguments, which betray a garbled view of the Committee's aims and a misreading of the Complaint. The Town, for example argues that (1) there is no private right to enforce the law, (2) the law doesn't cover the challenged activity, and (3) the Town cannot be forced to have its police department. As argued

---

[7] The Court should be able to take judicial notice that the Complete Streets program is a federally funded program administered by the Massachusetts Department of Housing and Community Development. The program has a mix of funding sources including from congressional appropriations under the Clean Air Act, under the theory that bike lanes help reduce air pollution by taking cars off the road. The program requires that municipalities put together an acceptable plan under the universe of approved project goals. Once accepted, municipalities will receive 90% project funding from the federal and state governments but must raise and spend 10% of their own money.

above, in relation to the Tort Claims Act, the Town performs a rhetorical slight of hand to transform the Complaint from a challenge to the legality of certain policies (permissible) to a complaint about a lack of enforcement (generally impermissible, although the Committee does skate the outside of this limit).

The Committee is, generally, not entitled to insist that a policeman write tickets to divers who disobey this law.  There are, in fact, due process to concerns if the Committee were to try to indict and punish the behavior of third-party divers who are not present before the Court.[8] However, when the Town and its officials believe that the law does not reach the conduct, as plead in their motion to dismiss, the Committee **can** ask this Court to determine and declare whether scuba diving (paid or unpaid) is within the reach of the law.  This Count will be decided by a declaration as to whether the Sunday Day of Rest Law, by its text, can reach scuba diving off a public beach.  This is simply declaratory relief about the reach of the law and the Town's policies.

For example, the Court should determine whether scuba diving (paid or unpaid) is a "game, sport, fair, exposition, play, entertainment or public diversion" within G. L. c. 136 §§ 2-4.  The Court should also determine whether paid scuba instruction is "Any manner of labor, business or work," which is within the G. L. c. 136 §6(1) exception.  §6(1), also has a proviso which does apply the law when labor or work is "a public nuisance" which would be ripe fodder for a declaration about the reach of the law.  Likewise, because scuba diving is not mentioned by the law, the Court should determine whether paid scuba diving instruction is implicitly included in exceptions for:

- "the operation of public bathhouses" §6(12)
- "The operation of boats for purposes of non-commercial fishing and recreation, or the sale of bait for fishing." §6(13)

---

[8] An argument which the Town dances around but never makes.

- "The catching or gathering of seafood and fresh water fish not otherwise prohibited by law." §6(14)

The Committee is not entitled to directly enforce the Sunday Day of Rest Law and does not seek to do so. However, when the enforcing agencies misconstrue the law (claiming no power to enforce) the Committee, whose members are injured by that interpretation, are entitled to ask this Court to give guidance as a declaration. Likewise, the Committee can have the Court declare the mechanics of the law's permitting and fee regime. Although a $2 fee is nominal, by statutory design, the Town currently has no facility, means, or procedure to charge it or even accept it if it was tendered. These are pure questions of law upon which declaratory relief is appropriate and designed for.

## VIII. Failure to Act

Failure to act claims, under the Civil Rights Act of 1871 (28 U.S.C. §1983), are heavily disfavored because they impose upon the freedom of action public officials need to do their job and prioritize public resources. However, the courts have routinely held out that, in narrow circumstances, such an occasion might be appropriate.

There is no doubt that the Town has made Committee members a special and specific promise. As the Complaint pleads there are signs on the beach which have rules regarding conduct on the beach, such as no changing of clothes. These rules are not general prohibitions. They are not even adopted as local regulations, although specific local regulations for other beaches in Town, such as Long Beach, do exist. As do general beach restrictions. However, the provisions of the rules do not match the regulations of the Selectmen or the Bylaws of the Town. These beach rules, specific to Back Beach, exist nowhere else. They were adopted in the past, as policy, to quell neighborhood concern about the use of the beach. Put another way, these beach rules are not regulations of general conduct passed with the sovereign legislative power, they are the policy of

a neighboring landowner, who has made promises to his neighbors about the conduct of people on his land.  The Town, a landowner, is entitled to create its own rules about the use of its property. It can decide even arbitrary rules, no blue swimsuits for example, and remove trespassers who do not comply. But if it makes those rules as specific promises for consideration, such as abating concern about beach use or preempting possible litigation, then the Committee Member do acquire a Roth style property interest in the beach rules.

The Town's police department is to be commended for its efforts to mediate and be a friendly and effective public service, especially given its limited resources.  However, the Town, especially the policymakers, can be held to account for making a specific, local promise upon which the Committee members rely to their detriment.

**IX.     First Amendment Retaliation**

The Town attacks this count, essentially claiming that because the Committee did not plead against individual Town officers, it is immune from suit.  This argument fundamentally misreads Monell v. Dept of Social Services, 436 U.S. 658 (1978).  It is true that municipal liability may not be founded upon the doctrine of respondeat superior, holding the Town responsible for the acts of its employees, absent a custom or policy.

However, Monell claims come in 4 different flavors. Karen M. Blum, *Making Out the Monell Claim under Section 1983*, 25 Touro L. Rev. 829, 829-830 (2009).

- A plaintiff may point to an officially adopted policy or custom
- An informal policy, which is pervasive and long standing, so as to constitute law
- A City of Canton claim (referred to as a failure to 'blank')-489 U.S. 378 (1989)
- A decision or act by the final policy maker, even if only a single instance. City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)

Although the retaliation complaint has sparse detail, that does not make it insufficient as a matter of law.

The Complaint adequately alleges substantial free speech and First Amendment petitioning activity.  Thereafter, it alleges, the Town retaliated by harassing the members to remove their previously approved granite driveway posts, and by denying a public records request another member made, for records about diving permits.  The Complaint, at ¶100, alleges a "pattern of official harassment and retaliation" and gives several specific examples, such as curb-cutting permits, granite driveway posts, trespassing, and public records requests.

The Town's attempt to recast the Committee's complaint is self-serving and does a disservice to the language of the pleading.  The public record request which the Town denied was expressly denied because the Committee member used his First Amendment rights to associate to litigate under NAACP v. Button, 371 U.S. 415 (1963).

> [Litigation] is thus a form of political expression. Groups which find themselves unable to achieve their objectives through the ballot frequently turn to the courts… And under the conditions of modern government, litigation may well be the sole practicable avenue open to a minority to petition for redress of grievances… For such a group, association for litigation may be the most effective form of political association.

NAACP, at 429-431.  Expressly declining to give Committee members public records which are available to the general public, because of the exercise of litigation and association rights, is prohibited by the First Amendment and the Civil Rights Act.  Because this was done explicitly because of resort to the courts, causation is not hard to allege or prove.  It comes from the words of the Town's own officers.  Other instances of retaliation are a little more remote in the causation department, but the Committee has fairly alleged retaliation and is now entitled to explore it in discovery.  In sum, the Complaint undoubtedly pleads First Amendment protected activity, and resulting 'adverse action.'  It also pleads an intentional and malicious connection, which although

directly stated is also capable of inference from the disparate treatment Committee Members receive in their official dealings, as opposed to members of the public.

**Conclusion**

Wherefore, the Committee respectfully asks this Honorable Court to deny the Town's motion to dismiss.

10/13/2020

                                         Respectfully Submitted,
                                         Back Beach Neighbors Comm.
                                         By its Attorney

                                         Michael Walsh
                                         BBO 681001
                                         Walsh & Walsh LLP
                                         PO Box 9
                                         Lynnfield, MA 01940
                                         617-257-5496
                                         Walsh.lynnfield@gmail.com

**Certificate of Service**

I, Michael Walsh, hereby certify that I have served a copy of this motion upon all participating ECF/CM filers on this 13th day of October, 2020.

/S/ Michael Walsh