UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BACK BEACH NEIGHBORS COMMITTEE, )<br>)<br>Plaintiff,        )<br>)<br>v.                                                              )<br>)<br>TOWN OF ROCKPORT,                       )<br>)<br>Defendant.   ) | CIVIL ACTION NO.<br>20-11274-JGD |

**MEMORANDUM OF DECISION AND ORDER ON**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

May 27, 2022

DEIN, U.S.M.J.

## I. <u>INTRODUCTION</u>

The Plaintiff, Back Beach Neighbors Committee (the "Committee"), has brought this action against the Town of Rockport ("Town"), over the purported failure of the Town to enforce regulations and municipal bylaws against individuals engaging in commercial and recreational scuba diving at Back Beach, a public beach in the Town, and alleging that the Town retaliated against it in response to the Committee's complaints.  On April 21, 2021, the court entered a Memorandum and Order on the Town's motion to dismiss, dismissing all counts of the Amended Complaint except for Count III (violation of Article IV of the Commonwealth of Massachusetts Declaration of Rights prohibiting the improper conferral of benefits to private individuals by the State) and Count IX (retaliation in violation of the First Amendment to the

United States Constitution) (Docket No. 33) ("Dismissal Mem.").[1] This matter is presently before the court on the "Defendant's Motion for Summary Judgment" (Docket No. 61) by which the Town is seeking summary judgment on these two remaining counts on the grounds that the undisputed facts establish that the Town did not confer a special benefit on the scuba divers that it did not confer on all other commercial groups that were issued permits to use the Town's public beaches and parks, and that the Town did not engage in a pattern of harassment and retaliation against the Committee members for speaking out against the scuba divers. Despite being given several opportunities to do so, the Committee failed to file a timely opposition to the defendant's motion for summary judgment. However, the Committee was given the opportunity to and did argue against the motion at a hearing held on February 15, 2022. (See Docket Nos. 65, 66, 67, 69, 71, 73). Where, as here, the party opposing summary judgment has failed to file a written opposition, the court is still obligated to evaluate the motion on the merits to determine whether summary judgment is appropriate. Aguiar-Carrasquillo v. Agosto-Alicea, 445 F.3d 19, 25 (1st Cir. 2006). After careful consideration of the parties' arguments, and for the reasons detailed herein, the defendant's motion for summary judgment is ALLOWED.

---

[1] The court dismissed the Committee's claims for violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (Count I); private nuisance (Count II); declaratory judgment (Count IV); ten taxpayer relief pursuant to Mass. Gen. Laws ch. 40, § 53 (Count V); violation of Mass. Gen. Laws ch. 136 (Count VI); public nuisance (Count VII); and failure to act in violation of 42 U.S.C. § 1983 (Count IX). (Dismissal Mem. at 17). Previously, the court had denied the Committee's request to certify questions to the Massachusetts Supreme Judicial Court. (Docket No. 24).

[2]

## II. STATEMENT OF FACTS[2]

In the instant action, the Plaintiff failed to file a timely opposition to Defendant's Motion for Summary Judgment, and thus the court may "take as uncontested all evidence presented with" the unopposed motion. Pérez-Cordero v. Wal-Mart P.R., 440 F.3d 531, 533-34 (1st Cir. 2006) (citing NEPSK, Inc. v. Town of Houlton, 283 F.3d 1, 7–8 (1st Cir.2002)). The court does not, however, credit mere allegations or conclusory assertions that are not supported by specific facts in the evidentiary record. See Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991). The court construes the record in the light most favorable to the nonmovant – the Committee. See Irobe v. United States Dep't of Agriculture, 890 F.3d 371, 377 (1st Cir. 2018). After a detailed review, this court concludes that no material facts are in dispute. The undisputed facts relevant to the remaining counts, viewed in the light most favorable to the Committee, are as follows.

### The Parties

The plaintiff Committee is an unincorporated association of abutters and neighbors who reside in the vicinity of Back Beach, one of twenty-one (21) public beaches and parks in the Town of Rockport. (DF ¶¶ 1, 3; Am. Compl. ¶ 1). The defendant Town is an independent municipality of Massachusetts with a long history as a vacation community, an artist colony, a fishing port and a mining town. (DF ¶ 2; Am. Compl. ¶ 2). The Town is one of two

---

[2] Unless otherwise indicated, the facts are derived from "Defendant's Local Rule 56.1 Statement of Facts" (Docket No. 63) ("DF") and the exhibits attached thereto ("Def. Ex."); and the Amended Complaint (Docket No. 8) ("Am. Compl."). References to the Defendant's Statement of Facts include the underlying record support, and the court has only adopted facts properly supported in the record. Unless otherwise indicated, page citations are to the ECF page numbers. Where appropriate to provide a fuller explanation of the plaintiff's position, the court has cited to the plaintiff's "Opposition to Defendant's Motion to Dismiss" (Docket No. 12) ("Pl. Opp.").

[3]

municipalities on Cape Ann on the North Shore of Massachusetts. (Am. Compl. ¶ 2). It is governed by a legislative charter with an elected Board of Selectmen who supervise a paid full-time Town Administrator. (DF ¶ 2; Am. Compl. ¶ 2).

### The Committee's Allegations re Conferral of Benefits

According to the Committee, its members have been harmed by the commercial scuba diving that is conducted off Back Beach in front of their homes. (Am. Compl. ¶ 3). Over the past 20 years, the police have been called to the neighborhood numerous times due to complaints about, *inter alia*, "divers undressing in the street, blocking driveways and streets, clanging air tanks, making noise outside of civilized hours, [and] intruding upon the neighbors' property and privacy." (Id. ¶¶ 5, 12-13). According to the Committee, the Town is responsible for creating these problems because the Town has been conferring "special benefits or privileges upon divers" and has otherwise enabled, a "special franchise." (Id. ¶¶ 39, 42). Specifically, the Committee alleges:

> The Town has created a special class of people who, in the narrow zone in front of the Committee Members, are exempt from beach regulations, parking rules, trespass, public nudity, and are free to do as they will. The Town has enabled this special franchise by giving out unrestricted permits, without condition, for no fee in contrast to other special permitted activity under the Town's bylaws. The Town has ignored its own legislative enactments, prohibiting commercial or group activities on the public beach, or diving in Rockport Harbors. The Town has staffed its policy bodies and committees, disproportionately, with stakeholders who have economic interest in ensuring continued unrestricted diving.

(Id. ¶ 42).

### Record Evidence

The summary judgment record before this court establishes the following facts. The Committee and its members made several complaints to the Planning Board, Selectmen, Town

[4]

Administration and the Town's Police Chief, John Horvath, about scuba diving activities at Back Beach. (Id. ¶¶ 5, 95). In October 2018, Chief Horvath met with several residents of Beach Street where Back Beach is located. (DF ¶ 19; Def. Ex. 17 ¶ 2). During this time, Back Beach's permitting process for use of the Town's public beaches and parks had lapsed. (See DF ¶ 21; Def. Ex. 13 at 29). After conferring with several Back Beach residents, in April 2019, Chief Horvath met with the DPW Director and Town Administrator to reinstate a permitting process for use of the Town's public beaches and parks. (DF ¶ 20; Def. Ex. 17 ¶ 3). Shortly after the meeting, the Town reinstated its permit process for all commercial activity occurring at any of the Town's twenty-one public beaches and parks. (DF ¶¶ 6, 21; Def. Ex. 1 ¶ 4).

To obtain a commercial permit, whether for scuba diving or another commercial activity at the Town's public beaches and parks, an applicant can apply through the DPW's website. (DF ¶ 7; Def. Ex. 7 ¶ 3). The application requires the applicant to fill in the applicant's personal information, the date of the requested permit, the time of the requested permit, the park or beach requested, the type of activity, the number of people, the rain date and time if applicable and an alternative park or beach. (Id.) No fee is charged for the permit or the application. (DF ¶ 5; Def. Ex. 1 ¶ 5).

The Committee's contention that scuba divers are treated as a special class because the number of permits issued to scuba divers are "unrestricted," and the divers are not charged fees "in contrast to other special permitted activity under the Town's bylaws" is not supported by the record. (Am. Compl. ¶ 42). Although the record reveals that scuba diving in total received a greater number of beach and park permits compared to other commercial activities, there is no evidence that the DPW imposed limits on permits it issued to other commercial

groups or activities. (See DF ¶ 8; Def. Ex. 7 ¶4). Of the 465 permits issued by DPW in 2020 and 2021, 2 were for "other," 100 were for "fitness," 40 were for "gathering" and 323 were for "scuba diving." (DF ¶ 8; Def. Ex. 7 ¶ 4). The scuba diving permits related to seven beaches, with Back Beach being the third most popular.[3] None of the activities on beaches or parks were charged a fee for a permit. (DF ¶ 5). Permits issued for live music also were not charged a fee. (DF ¶ 10).[4]

The Committee further asserts as evidence of special treatment of scuba divers, that Town officials have repeatedly failed to enforce Town bylaws against them. (See Pl. Opp. at 12; Am. Compl. ¶ 42). The Committee points to Rockport Bylaws § 9.A.1 and § 9.A.10, which prohibit scuba diving, swimming or snorkeling in "Rockport harbors" except for purposes related to "hull and mooring inspection, cleaning and maintenance." (Pl. Opp. at 8; DF ¶ 14; Def. Ex. 1 ¶ 8). However, the Bylaws define "Rockport harbors" as "Rockport Harbor, Old Harbor, Granite Pier Harbor and Pigeon Cove Harbor" and do not include Back Beach. (Rockport Bylaws § 9.A.1). Moreover, Mass. Gen. Laws ch. 91, § 10D prohibits the Town from barring scuba divers from accessing the water off of Back Beach because it is a public beach.[5]

---

[3] The breakdown of the number of beach and park permits issued to scuba divers per location for 2020 and 2021 were as follows: Back Beach 74; Cathedral Rocks 4; Front Beach 79; Halibut Point 4; Loblolly Cove 4; Old Garden Beach 133; and Pebble Beach 25. (DF ¶ 9).

[4] In opposition to the defendant's motion to dismiss, the Committee argued that there were other activities for which the Town did charge a fee, such as to flea market vendors. (Pl. Opp. at 7-9). Not only is there no evidence of these alleged facts in the summary judgment record, but there also is no reason why scuba diving should be compared to such activities as opposed to other activities which take place on the beaches and in the parks of Rockport.

[5] Mass. Gen. Laws ch. 91, § 10D provides that, "[n]o person shall be denied access during daylight hours to commonwealth tidelands across any land available to the public for swimming or recreation which is owned or controlled by the commonwealth or any of its political subdivisions for the purpose of scuba diving or skin diving which activities are hereby declared to be water dependent uses …."

The undisputed facts also fail to support the Committee's contention that the scuba divers were exempt from laws and regulations.  Rather, the evidence in the record is that the Rockport Police Chief communicated with and met with Committee members about their concerns regarding scuba divers along Beach Street and the scuba diving schools' use of Back Beach in October 2018, and took steps to increase the enforcement of Town regulations by, among other things, notifying all Police Department personnel about the regulations governing the beach areas in May and June of 2019 and directing patrols to address concerns about parking and public undressing.  (DF ¶¶ 19, 22-23).  Contrary to the Committee's argument, the record evidence is that during the period from June 14, 2015 through November 8, 2021, the police received and responded to complaints both by and against Committee members, and that the Police enforced Town regulations.  (DF ¶ 24).  The record also establishes that Committee members have met with members of the Town's Board of Selectmen, including its present Chair.  (DF ¶ 41).  Accordingly, the evidence shows that the Selectmen were receptive to the Committee's complaints about scuba divers.

Finally, the Committee alleges the Town, "has staffed its policy bodies and committees, disproportionately, with stakeholders who have economic interest in ensuring continued unrestricted diving" as evidence that the scuba divers were given preferential treatment.  (Am. Compl. ¶ 42).  However, there is no evidence in the record to support the allegation that the Town's administration or committees were improperly populated.

### Town's Alleged Retaliation Against Committee Members

The Committee additionally claims that its members endured, a "pattern of official harassment and retaliation" for exercising their First Amendment rights to petition the Town,

for speaking out against scuba diving at Back Beach in the Town meetings, and for filing litigation. (Am. Compl. ¶¶ 100, 94-99; Pl. Opp. at 16). According to the Committee, its members were subjected to, rescission of a previously approved permit, delayed and denied "routine" permit applications by the DPW, harassment by a Town official in the form of threats to trespass on a member's property,[6] and a public records request concerning scuba diving allegedly was denied due to the instant litigation. (Id.) Many of these conclusory allegations have no support at all in the record. For others, the Town has described the incidents in detail. (See Def. Mem. (Docket No. 62) at 6-15). The undisputed facts fail to support the Committee's allegations of wrongdoing by the Town. Rather, as described below, the record establishes that the Town was responsive to the complaints of the Committee members and engaged in efforts to satisfy competing demands of various residents. In addition, while certain Committee members were not satisfied with decisions made by the Town, there is no evidence of retaliation by the Town for the Committee members' conduct in speaking out against the scuba divers or in bringing several lawsuits in various courts. The record does support a finding of a robust dispute among the residents of Rockport as to the merits of the Committee's position regarding scuba divers. Such discourse between residents, however, does not support a claim of First Amendment retaliation. (See Def. Mem. at 7).

Briefly, the facts relating to the Committee's most substantive charges of harassment and retaliation are as follows.

---

[6] The Committee alleged that, "the Town has volunteered to trespass on one of the committee members property, to cut the member's trees, solely to appease an abutting public official by improving his view of the ocean despite not having seaside property, or paying the equivalent taxes for the privilege." (Am. Compl. ¶ 99).

John Franco ("Mr. Franco") is a Committee member and Town resident. (DF ¶1). He purchased property on Beach Street in 1999. (DF ¶15; Def. Ex. 11 at 6-7). Sometime thereafter, he decided to replace wooden posts on his property, and installed granite posts on public land. (DF ¶ 43; Def. Ex. 11 at 17; Def. Ex. 3 at 27-29). The DPW Commissioner requested that he remove the posts in November 2020, but he had refused, stating that they will be removed "when every resident removes every item that they have on town property in the Town of Rockport. I will remove them last. You have my word for it." (DF ¶ 45; Def. Ex. 11 at 21-22). There is no evidence that Mr. Franco's position on the scuba divers, or anything else relating to his membership on the Committee, was a substantial or motivating factor in asking him to remove the posts from Town property.

The evidence also shows that Mr. Franco's neighbors have called the police to complain about construction work he was doing on his property. (DF ¶ 46; Def. Ex. 11 at 23-26). The police responded but did not take any action against him, and Mr. Franco testified that he "had great luck" with someone from DPW whom he described as "wonderful" in connection with his construction project. (Def. Ex. 11 at 25-26). Nevertheless, he feels he has been retaliated against, "not just" because of his opposition to the scuba divers, "it's just retaliation in general" and he has "no idea" for what. (Id. at 26-27).

According to another aggrieved Committee member and Town resident, Thomas Giblin[7] ("Mr. Giblin"), the Town retaliated against him for his participation in this instant action by denying his public records request for permits issued to scuba divers and by issuing him a

---

[7] Mr. Giblin rents the property at 54 Beach Street that is owned by Mr. and Mrs. Franco. (DF ¶ 16).

parking ticket.  (Am. Compl. ¶ 98; DF ¶ 40; Def. Ex. 13 at 59-60).  According to the Town, "[t]he Committee has filed a separate Superior Court lawsuit based on the Town's response to Mr. Giblin's public records request even though the Town has repeatedly advised Mr. Giblin and Plaintiff's Counsel that the record requested – a spreadsheet of all permits issued for the use of public beaches in Town for 2020 does not exist."  (Def. Mem. at 8, n.2).[8]  As to the parking ticket that Mr. Giblin received, the record reveals that Mr. Giblin received the ticket for parking in two spaces at Back Beach in front of his house. (DF ¶ 40; Def. Ex. 13 at 59-63).  After receiving a complaint about the car, the police attempted to contact Mr. Giblin by telephone before issuing the citation, but he did not answer his phone.  (DF ¶ 40; Def. Ex. 13 at 60-61).  Thereafter, the police went to Mr. Giblin's home to ask him to move his car, which, according to Mr. Giblin, was parked so that the nose of his vehicle was "maybe a foot over the parking spot in front of it."  (DF ¶ 40; Def. Ex. 13 at 59).  After Mr. Giblin refused to move his car, the police issued him a parking ticket.  (DF ¶ 40).

Another Committee member, Stephanie Rauseo ("Ms. Rauseo"), has had numerous interactions with the police, both about parking in front of her house and the behavior of the scuba divers.  (See DF ¶¶ 17, 19, 24-26).  Similarly, Gaetano (Guy) and Rose Cerundulo complained about the parking situation in front of their property.  (DF ¶¶ 18, 24, 27).  The undisputed facts establish that the Town responded to Ms. Rauseo's and the Cerundulos' complaints and took them seriously.  For example, the Police Chief and DPW Director went to Ms. Rauseo's home to consider the options, and the Town changed the parking in front of her

---

[8] See Back Beach Neighbors Committee v. Town of Rockport, Essex Superior Court C.A. No. 2177CV00364-C.

[10]

house to a compact car only, handicap, parking space. (DF ¶ 25). The Town also decided not to put electric vehicle charging stations on Beach Street in response to Ms. Rauseo's complaints. (DF ¶ 26). In response to the Cerundulos' complaints, the Town changed the parking spot in front of their property to a resident parking only space. (DF ¶ 27).[9]

The Committee also contends that various actions of other Town residents constituted harassment and retaliation for their opposition to the scuba divers. In particular, the Committee challenged alleged actions by Beth Renner ("Ms. Renner"), Jay Boyle ("Mr. Boyle"), and Gary Gorczyka ("Mr. Gorczyka"). The undisputed evidence establishes that while some of the individuals involved held some positions with Town committees or departments, they were not representing or acting as agents for the Town when they engaged in the challenged conduct.

Ms. Renner is a volunteer member of the Town's Beautification Committee and a Town resident. (DF ¶¶ 28, 29). The Beautification Committee is responsible for planning and maintaining the Town's gardens, and Ms. Renner was responsible for planting flowers in two skiffs on Back Beach. (DF ¶29). Ms. Renner made and distributed seventy-four signs to residents of the Town that read, "all are welcome in Rockport, including divers." (DF ¶ 30). According to Ms. Renner, she made the signs to show support to the scuba divers because she noticed they were being treated poorly by, in particular, her neighbor "Tom" yelling at the divers and taking movies of them. (Def. Ex. 18 at 6-7). She believed that the Town should be very welcoming because it exists on money received from tourists. (Id. at 32). The signs are

---

[9] Metered parking has been allowed on Beach Street since at least 1999 when the Francos bought their house, and the Committee members have not challenged the fact of public parking on their street. (See DF ¶¶ 15, 17-18).

[11]

not Town signs, and there is no indication on the signs that they were sponsored by the Town in any way. (See DF ¶ 30; Def. Ex. 4 at 46-47; Def. Ex. 18 at 7-8).

Mr. Boyle is a Town resident and is on the Town's Insurance Committee. (DF ¶ 38). The Committee meets twice a year and is charged with reviewing the Town's insurance policies to make sure that the coverage they provide is adequate. (Id.). Mr. Boyle posted one of Ms. Renner's signs on his lawn in support of scuba divers. (Id.). Mr. Giblin complained to the police that Mr. Boyle had "laid on his horn" driving down Beach Street and gave residents "the middle finger." (DF ¶ 38; Def. Ex. 13 at 81-82). However, according to the record, the Police Department investigated the complaint and found that Mr. Boyle did not engage in the conduct alleged by Mr. Giblin. (DF ¶ 38). Even assuming Mr. Boyle had engaged in the challenged conduct, there is no indication that he was acting in an official capacity at the time.

The Committee also cites to social media posts made by Mr. Gorczyka, who is a seasonal employee of the Town of Rockport at the Town's transfer station. (DF ¶ 34). He made several Facebook posts about the Committee and its members on Facebook because he thought the Committee is "trying to take what's currently public town property for themselves" and otherwise alter the character of the Town. (DF ¶¶ 34, 35; Def. Ex. 20 at 12).[10] According to Mr. Gorczyka, he made the posts as a "concerned citizen" and because he was considering passing on his membership "from the Gloucester American Legion to the Rockport American Legion." (DF ¶¶ 35, 36). Mr. Gorczyka testified that the Town did not encourage, promote, request or solicit him to make the posts. (DF ¶ 35; Def. Ex. 20 at 11). Nor is there any indication in the

---

[10] According to the Town, the Committee has brought an action in the Land Court seeking to declare that the Committee members own Beach Street, Back Beach, and other parcels of public property near or abutting their properties. (Def. Mem. at 7).

[12]

record that Mr. Gorczyka made these posts in any official capacity or even as an employee of the Town.

The Committee also cites to an incident in June 2021, when two men were arrested and charged with shooting BB guns throughout the Town, including on Back Street. (DF ¶ 33). While one of the accused was a Rockport resident, he denies knowing the members of the Committee or holding any animus towards them. (DF ¶ 33; Def. Ex. 19 at 8).

The Committee also charges that the Town transferred money at the Spring 2021 Town Meeting away from "the Back Beach revetment project." (See Def. Mem. at 8). However, the record evidence is that, at the Town Meeting held on May 15, 2021, Town residents voted to transfer $110,000 from free cash to a Back Beach account for design and construction. (DF ¶¶ 31-32).

Finally, the Committee seems to cite to the Town's allowance of amplified concerts at the gazebo on Beach Street as evidence of retaliation and harassment, and cites to the fact that during one concert, the performer changed the lyrics of "this land is your land" to "Back Beach is your beach." (See Def. Mem. at 8; Def. Ex. 5 at 28-29). The gazebo on Beach Street is controlled by the Board of Selectmen in conjunction with the American Legion, which rents it out. (DF ¶ 42). There are two concert series in the summer, one is run by the American Legion and the other is ran by, Music at the Beach, a small organization established to add public music to the Town. (Id.). If the words to the song were changed, it would have been done by the artist. (Def. Ex. 5 at 29). There is no evidence that the operation of the concerts was affected in any way by, or in retaliation for, the Committee members' actions or statements concerning the scuba divers.

Additional factual details relevant to this court's analysis are described below.

### III.  ANALYSIS

#### A. Standard of Review

Although the Committee argued orally in opposition to the Town's motion for summary judgment, it failed to file written pleadings in a timely manner, despite being given the opportunity to do so.  Nevertheless, the court has carefully analyzed the merits of the Town's motion.  An unopposed motion for summary judgment does not automatically give rise to a grant of summary judgment.  Aguiar-Carrasquillo, 445 F.3d at 25. "Instead, 'the district court [is] still obliged to consider the motion on its merits, in light of the record as constituted, in order to determine whether judgment would be legally appropriate.'" Id. (alteration in original) (quoting Mullen v. St. Paul Fire & Marine Ins. Co., 972 F.2d 446, 452 (1st Cir. 1992)).  "It is well-settled that 'before granting an unopposed summary judgment motion, the court must inquire whether the moving party has met its burden to demonstrate undisputed facts entitling it to summary judgment as a matter of law.'"  Id. (quoting Lopez v. Corporación Azucarera de P.R., 938 F.2d 1510, 1517 (1st Cir. 1991)).  However, the court may "take as uncontested all evidence presented with" the unopposed motion.  Pérez-Cordero, 440 F.3d at 533-34 (citing to NEPSK, 283 F.3d at 7–8).

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)) (additional citations omitted).  The burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no

[14]

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that have "the potential of affecting the outcome of the case," and there is a genuine factual dispute where "the evidence 'is such that a reasonable jury could resolve the point in the favor of the non-moving party.'"  Taite v. Bridgewater State Univ., Bd. of Trs., 999 F.3d 86, 93 (1st Cir. 2021) (citations omitted).  The Court must review the record "in a light most favorable to the non-moving party[.]"  Lima v. City of E. Providence, 17 F.4th 202, 206 (1st Cir. 2021).

Applying these principles to the instant case, the Defendant's motion for summary judgment must be allowed.

### B. Conferral of Benefits under the Massachusetts Declaration of Rights

In Count III of their Amended Complaint, the Committee claims the Town violated Article VI of the Massachusetts Declaration of Rights ("Article VI")[11] by conferring a special benefit upon scuba divers.  It is questionable whether a direct right of action exists under Massachusetts law to enforce the Declaration of Rights.  See Pimentel v. City of Methuen, 323 F. Supp. 3d 255, 274 (D. Mass. 2018) (and cases cited).  However, since the Town assumes the viability of such a cause of action, this court will not reach that issue.  The undisputed facts establish that no special benefits were conferred upon the scuba divers, so this claim must fail.

---

[11] Article VI provides that "[n]o man, nor corporation, or association of men, have any other title to obtain advantages, or particular and exclusive privileges, distinct from those of the community, than what arises from the consideration of services rendered to the public[.]"  Mass. Const. Pt. I, art. VI.

Article VI "prohibits the improper use of State power for private interests." Commonwealth v. Ellis, 429 Mass. 362, 371, 708 N.E.2d 644, 650 (1999). It "concerns hereditary titles and offices" and "does not impose a constitutional prohibition on the conferral of benefits to individuals where the public is served." Leigh v. Board of Registration in Nursing, 399 Mass. 558, 564, 506 N.E.2d 91, 95 (1987). The court previously declined to dismiss this count of the Amended Complaint because the Committee had "allege[d] that '[t]he Town has created a special class of people,' namely scuba divers, who are exempt from local rules and regulations" including providing scuba divers with permits without conditions and without fees, "in contrast to other special permitted activity." (Dismissal Mem. at 9). However, discovery has not supported these allegations. As detailed more fully above, scuba divers must follow the same permit process available to all other commercial groups seeking to use the public beaches and parks in the Town, and they are similarly not charged a fee for the permit or application. In addition, the Town appropriately did not apply the "no scuba diving" Bylaw § 9.A.10 to Back Beach, since Back Beach is not included in the definition of "Rockport harbors" to which the Bylaw applies. (Pl. Opp. at 8; DF ¶ 14; Def. Ex. 1 ¶ 8). See Shirley Wayside Ltd. P'ship v. Bd. of Appeals, 461 Mass. 469, 477, 961 N.E.2d 1055, 1062 (2012) ("When the meaning of the language is plain and unambiguous, we enforce the [bylaw] according to its plain wording unless a literal construction would yield an absurd or unworkable result.") (internal quotation omitted).

The record also establishes that the police took steps to enforce applicable rules and regulations against scuba divers and responded to Committee members' complaints. The undisputed facts establish that, "[t]he Committee's Article 6 claim is without merit because

there is no association of persons, including scuba divers that have received an advantage or 'particular or exclusive privilege[], distinct from those of the community,' who seek a permit to use the public beaches for group or commercial activities." (Def. Mem. at 6).

### C. First Amendment Retaliation Claim

In Count IX of the Amended Complaint, the Committee alleges that the Town has engaged in a "pattern of official harassment and retaliation" as a direct result of Committee members' complaints about scuba diving at Back Beach. (Am. Compl. ¶¶ 94 – 100). This claim too is not supported by the undisputed facts.

"Under the First Amendment, retaliation claims proceed in two stages." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 43 (1st Cir. 2012) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977); Guilloty Perez v. Pierluisi, 339 F.3d 43, 56 (1st Cir. 2003)). "A plaintiff must first prove that (1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." Id. (citing González-Droz, 660 F.3d 1, 16 (1st Cir. 2011); Gorelik v. Costin, 605 F.3d 118, 123 (1st Cir.2010)). "This showing necessitates proof of a causal connection between the allegedly protected speech and the allegedly retaliatory response." González-Droz v. González-Colón, 660 F.3d at 16. A pattern of informal harassment may establish a First Amendment retaliation claim if the alleged harassment has a chilling effect on the plaintiff's exercise of his or her First Amendment rights. Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011). Under the second step, the Town may then avoid a finding of liability by showing that it would have

reached the same decision even in the absence of the protected conduct. González-Droz, 660 F.3d at 17.

It is undisputed that that the Committee members engaged in constitutionally protected speech by petitioning the Town, by filing this and other lawsuits, and by otherwise voicing their concerns during official Town meetings about scuba diving at Back Beach. See id. at 16 (filing of civil actions is constitutionally protected speech); BE & K Constr. Co. v. NLRB, 536 U.S. 516, 524, 122 S. Ct. 2390, 2396, 153 L. Ed. 2d 499 (2002) (noting that petitioning the government is protected activity). However, the record fails to support the Committee's contentions either that the Town undertook adverse actions against the Committee members or that there was a causal relation between the Town's conduct and any protected speech by the Committee members. Moreover, the record supports the conclusion that the Town's conduct would have been the same even absent the Committee members' protected actions. Consequently, summary judgment will enter in favor of the Town on this claim as well.

The facts are discussed in detail above and will not be repeated here. To the extent that the Committee complains about official enforcement actions against its members, such as asking Mr. Franco to remove the posts he put on Town property and asking Mr. Giblin to move his improperly parked car, the undisputed facts establish that the Town's actions were justified, consistent with the applicable law and unrelated to the Committee members' statements or views regarding the scuba divers. To the extent that the Committee is not satisfied with the Town's response to a FOIA request, the record establishes that a legitimate dispute exists concerning the sufficiency of the Town's response and shows that the Town is addressing that issue in another court. The record establishes further that "the Town has responded to [the

[18]

Committee members'] concerns, albeit not granting all of the Committee Members' requests." (Def. Mem. at 8-9). These facts are inconsistent with the Committee's contention that there was retaliation against its members.

To the extent that there was a division between the residents of Rockport, all residents had the right to express their opinions. The fact that residents volunteered for Town committees did not make them spokespersons for the Town, and there is no evidence that any of the conduct challenged by the Committee purported to be undertaken in any type of official capacity. Even assuming that the residents who took exception to the Committee's actions were public employees, they were still entitled to speak "as a citizen on a matter of public concern." Díaz-Bigio v. Santini, 652 F.3d 45, 51 (1st Cir 2011) (citing Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).

Even assuming some actionable conduct on the part of a Town employee, the Town itself cannot be held liable absent proof "that a policy or custom of the [Town] led to the constitutional deprivation alleged." Santiago v. Fenton, 891 F.2d 373, 381 (1st Cir. 1989) (citing Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). Moreover, the custom or practice had to "be so well-settled and widespread that the policy making officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end it." Walden v. City of Providence, R.I., 596 F.3d 38, 57-58 (1st Cir. 2010) (quotation and citation omitted). Here there is no evidence of any policy or custom of the Town, much less a pervasive one.

The Amended Complaint survived the motion to dismiss because at the "early stage" of the litigation the Complaint had sufficiently "allege[d] a 'pattern of official harassment and

[19]

retaliation,' that such harassment has 'permeated throughout the Town's officialdom,' and that the Town has obfuscated or ignored various applications of Committee members in order to harass them." (Dismissal Mem. at 15). However, these allegations were not supported by discovery. "[A] conglomeration of 'conclusory allegations, improbable inferences, and unsupported speculation' is insufficient to discharge the nonmovant's burden" at the summary judgment stage. DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005). Summary judgment shall enter in favor of the Town on this count as well.

## IV. **CONCLUSION**

For all the reasons detailed herein, the "Defendant's Motion for Summary Judgment" (Docket No. 61) is ALLOWED.

/s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge